## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**JOHN W.,[1]**

        **Plaintiff,**

                                    **Case No. 2:23-cv-3400**

      **v.**                              **Magistrate Judge Norah McCann King**

**FRANK BISIGNANO,**
**Commissioner of Social Security,[2]**

        **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff John W. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On November 24, 2020, Plaintiff filed his application for benefits, alleging that he has been disabled since October 6, 2013. R. 56, 66, 128–36. The application was denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

upon reconsideration. R. 74–77, 81–82. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 83–86. ALJ Theresa Merrill held a hearing on April 26, 2022, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 32–55. In a decision dated July 19, 2022, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 24, 2020, the date on which the application was filed, through the date of that decision. R. 10–21. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 21, 2023. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 10, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 11.[3] On April 11, 2024, the case was reassigned to the undersigned. ECF No. 12. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or

"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of*

*Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see*

*K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into

account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.

at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

     Although an ALJ is not required "to use particular language or adhere to a particular

format in conducting [the] analysis," the decision must contain "sufficient development of the

record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d

501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an

expression of the evidence s/he considered which supports the result, but also some indication of

the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication

of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent

4

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 35 years old on the date on which he filed the application. R. 20. At step one, the ALJ found that, although Plaintiff had worked after that date, this work did not rise to the level of substantial gainful activity. R. 13. Accordingly, the ALJ found that Plaintiff had not engaged in substantial gainful activity between November 24, 2020, the application date, and the date of the ALJ's decision. R. 13.

At step two, the ALJ found that Plaintiff's schizophrenia spectrum; anxiety disorder; and substance addiction disorder (alcohol) were severe impairments. R. 13. The ALJ also found that Plaintiff's lumbago and obesity were not severe. R. 13–14.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 14–16.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels work subject to various non-exertional limitations. R. 16–20. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a construction worker. R. 20.

At step five and relying on testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as a kitchen helper, a cleaner, and a mail clerk—existed in the national economy and could be performed by Plaintiff with this RFC. R. 20–21. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 24, 2020, the application date, through the date of the decision. R. 21–22.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the

Commissioner be reversed and remanded for further proceedings. *Plaintiff's Social Security Brief,* ECF No. 8. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 10.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    Theodore Brown, Jr., Ph.D.

Theodore Brown, Jr., Ph.D., conducted a consultative psychological examination of Plaintiff on March 1, 2021. R. 699–703. Plaintiff, who was cooperative and pleasant throughout the examination, reported that he had a high school education and was employed part-time loading trucks, having worked at that job for five days at the time of the examination. R. 699. Plaintiff also reported two psychiatric hospitalizations in 2013, each lasting two weeks. *Id*. Dr. Brown noted that Plaintiff "drinks some alcohol, smoked marijuana until 2013. Ambiguous as to whether or not and to what extent it is still ongoing." *Id*. Dr. Brown also noted a prior criminal history involving drugs and a gun, and Plaintiff's release from detention in November 2020. R. 699–700. Upon mental examination, Dr. Brown noted as follows:

> **MENTAL STATUS EXAMINATION:** Claimant was pleasant and cooperative throughout the Examination. Overall presentation was adequate.
>
> Appearance was same as stated age. Dress was in leisure attire. Hygiene was adequate. Prosthetic devices - none. Gait, posture, and motor behavior - normal. Eye contact - appropriate.
>
> **Proverb Interpretation:** When asked to interpret proverbs, Claimant's responses were as follows: You shouldn't judge a book by its cover – "Don't judge someone based upon the way they look." Don't count your chickens before they hatch – "Don't count on something you don't have yet." No need to cry over spilled milk – "It's over. It's done with. Move on." **Information:** Claimant's responses to information were as follows: Number of months in a year – "12." A thermometer is for "temperature." Direction of the sunrise – "To the west." **Memory:** He could

8

remember three of three items immediately and two of three after five minutes. **Digit Span:** Six digits forward and three digits backwards. **Calculations:** 4 + 3 = 7, 11 − 5 = 6, 3 x 4 = 12, and 18 ÷ 3 = 6. **Serial 7s/3s:** He could not count backwards from 100 by 7s. He could count backwards from 30 by 3s. **Judgment:** If he saw smoke coming from his neighbor's house – he would "call 911." Wallet found on the floor in the store – "Turn it in to customer service." Names in the phonebook being in alphabetical order – "Make things easy to find." **Similarities and Differences:** Apples and oranges are "fruit." Table and chairs are "furniture." Piano and guitar – "musical instruments." **Speech:** Fluent and clear. He was able to express his thoughts and feelings with no hesitation or delay. **Thought Processes:** Coherent and goal directed. No evidence of illusions, delusions, hallucinations, or paranoia in the Evaluation setting. **Affect:** Appropriate to thought content with full range of speech associated with thought affect. **Mood:** During the Examination was neutral. **Sensorium:** Clear. **Orientation:** He was oriented to person, place, and time. He knew the day, the month, and the year. **General Fund of Information:** He knew Biden is president, 52 weeks in a year, and Trenton is the capital of New Jersey. **Insight:** Fair.

**MODE OF LIVING (Current Level of Functioning):** Claimant lives by himself. He can dress, bathe, and groom himself. He gets some help with cooking, cleaning, laundry, shopping from his family. He doesn't drive. He manages his own money. He has no friends. Family relationships are okay. Hobbies and interests - reading, listening to music, studying. He spends his time at home reading, listening to music, and/or studying.

The results of the present Evaluation appear to be consistent with Claimant's allegations and give basis for the following diagnoses:

**DIAGNOSTIC IMPRESSION**:

Schizophrenia, Paranoid Type.
Anxiety Disorder, Unspecified.
Rule Out Panic, Anxiety Disorder.
Alcohol Abuse/Dependency Disorder.

R. 701–02. Dr. Brown stated that Plaintiff's prognosis was "[u]ndetermined, very much

dependent upon Claimant receiving appropriate mental healthcare support and treatment and

benefiting from the same." R. 702. Dr. Brown recommended that "until Claimant is at least

receiving mental healthcare support and treatment he not be allowed to manage his own funds."

*Id*.

### B.    State Agency Reviewing Consultants

Steven Reed[4] conducted an initial review of the record on behalf of the state agency on March 22, 2021. R. 57–65. Consultant Reed specifically considered years of medical evidence as it appeared in the record at that time, which included, *inter alia*, reports of visual, tactile, and auditory hallucinations; paranoia; and anxiety. R. 58–60. The record documented the following medically determinable impairments: schizophrenia spectrum and other psychotic disorders; anxiety and obsessive-compulsive disorders; and substance addiction disorders (alcohol). R. 60. In considering the paragraph B criteria of Listing 12.06, Consultant Reed opined, *inter alia*, that Plaintiff had no limitation in his ability to understand, remember, or apply information, but was moderately limited in the remaining three functional areas, namely, ability to interact with others; ability to concentrate, persist, or maintain pace; and ability to adapt or manage oneself. R. 61. Under the heading "MRFC Additional Explanation," Consultant Reed concluded as follows:

35 YOM, initial T16, alleging "Bipolar disorder; Schizophrenia; Psychotic breakdown";

-Prior Allow (2013);

-Educ: 1 year of college;

-Hx of DAA and incarceration;

-CL with apparent Hx of perceptual disturbances, was closely monitored by psych staff for several years within NJDOC correctional system where *he managed to function adequately without medication*. Per 11/2020 D/C dx from Bayside prison, CL had no active psych Dx and had no psych Rx;

-ADLs: Despite self-reported Sx, *CL is able to function independently*;

-No current OP psych Tx MER is available (CL reportedly recently began receiving counseling);

---

[4] The record does not reflect this consultant's specific qualifications, but his specialty is psychology. R. 64–65.

-No current psych Rx;

-DDS tele-claim ob: "Nh sounded calm. Nh sounded lucid and coherent. Nh was cooperative and answered all questions accordingly. NH voice was low and his speech was slow.";

-CEMSE, Dr. Brown: Self-report: Numerous Sx--including psychotic Sx such as AH--are interfering with his capacity to function; Overt behavior / observations: AOx3; "...well-groomed, well-dressed... pleasant, cooperative...impression of mental status (1-10 scale, where 10 = worst) is a 6 or 7... lives alone...employed p/t loading trucks... overall presentation was adequate... hygiene adequate... gait, posture, and motor behavior--normal. Eye contact appropriate..." On cognitive screening, CL performed adequately across all areas including abstract reasoning; FOK; memory (3/3, 2/3 @ 5"; DF/DB 6/3); and Math calculations (e.g., S3s correct); TP coherent, relevant; no overt signs of psychosis; Mood neutral; per CE, Dx impression = Paranoid Schizophrenia; Unspecified Anxiety d/o; Alcohol Use d/o; Prognosis: "very much dependent upon receiving appropriate mental healthcare. . .";

*CL's mental functional capacity is Moderately impaired. Despite CL's reported psych Sx, in a work-like setting with simple interpersonal requirements he would be able to understand, recall, and execute instructions and simple tasks with adequate CPP, relate adequately, and adapt to minor changes in a routine.*

These findings complete the medical portion of the disability determination.

R. 63–64 (emphasis added).

Janet Anguas-Keiter, Psy.D., reviewed Plaintiff's medical record upon reconsideration for the state agency on October 13, 2021. R. 67–73. Dr. Anguas-Keiter specifically noted that "[o]verall evidence reviewed. NO updated MER or ADLS to support worsening or change in MH MDI. Appears congruent with initial assessment. SEE MRFC." R. 69; *see also* R. 68 (stating that "upon reconsideration claimant states there has been no change in condition nor new conditions"). Under the MRFC additional explanation on reconsideration, Dr. Anguas-Keiter stated: "Case reviewed. Overall evidence supports moderate impairments and limitations. MER suggests moderate impairments, ADLs and current work support mild to moderate limitations. Overall, clmt is capable of completing srts in a socially limited setting, per ADLs, PRW, and

MER." R. 72; *see also* R. 71–72 (including the evidentiary summary set forth in the MRFC explanation in the initial state agency review).

## V.    DISCUSSION

The ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to certain non-exertional limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: He is able to understand remember and carry out simple routine and repetitive instructions; perform work that does not require specific production rates such as assembly line work or hourly quotas; tolerate occasional contact with supervisors and coworkers but would be unable to work with the public. The claimant would be able to adapt to routine changes in the workplace that are occasional. Due to lapses in concentration focus or memory, the claimant would be off task 5% of the day.

R. 16. Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because the ALJ erred in her consideration of the opinions of the state agency reviewing consultants. *Plaintiff's Social Security Brief*, ECF No. 8, pp. 14–24. Plaintiff also argues that the ALJ failed to consider his physical impairments of lumbago and obesity, resulting in a flawed RFC. *Id*. at 24–28. Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also*

*Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In finding that Plaintiff had the RFC for a full range of work at all exertional levels subject to only non-exertional limitations, the ALJ considered years of record evidence regarding Plaintiff's impairments, including, *inter alia*, Plaintiff's activities of daily living, including his ability to manage his personal care independently (although he was sometimes neglectful due to his symptoms), prepare simple meals, do his own laundry, use public transportation, shop in stores, speak with his church pastor three times a week, see a therapist weekly, and see a psychiatrist every two weeks; the April 2020 physical examination that revealed a body mass index ("BMI") of 39.7, but all other findings within normal limits, including mental status findings of full orientation with intact judgment and insight; the August 2020 physical examination, which also revealed a BMI of 39.7 and a blood pressure reading of 122/82, but with all remaining findings within normal limits, including a normal respiratory effort without rales, rhonchi, or wheezes, and full mental orientation; Dr. Brown's examination findings, including, *inter alia*, that Plaintiff pleasant and cooperative throughout, had a normal gait, posture, and motor behavior, and appropriate eye contact and demonstrated no difficulty with abstraction, interpreting proverbs, performing simple mathematical calculations, and counting backwards from 30 by threes, although he could not count backwards from 100 by sevens; the finding of fluent and clear speech and the ability to express his thoughts and feelings with no hesitation or

13

delay, coherent and goal directed thought processes with no evidence of illusions, delusions, hallucinations, or paranoia during the examination; neutral mood and appropriate affect, with a full range of speech associated with thought, he was fully oriented, with a clear sensorium, adequate fund of information, and fair insight; a January 18, 2022, assessment of behavioral health level of care from Rutgers University Behavioral Health Care that reflected a primary diagnosis of schizophrenia, and the notation that, although Plaintiff presented with some psychiatric decompensation that impaired his functioning, he was agreeable to participating in therapy, attending groups, and undergoing medication management; behavioral health care records from Rutgers University Behavioral Health Care dated March 15, 2022, that reflected mental status examination findings that Plaintiff was fully oriented, with abstraction capacity that looked chronically decreased, but his memory was grossly intact, and Plaintiff reported that he was compliant with his medication (paliperidone), and that his symptoms of depression, anxiety, and hearing voices had improved; and the state agency opinions, which the ALJ found to be "persuasive" because "they are supported by explanation and citations to evidence and are consistent with the relevant medical evidence of record[.]" R. 17–19. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 210 (3d Cir. 2019) ("A limitation to 'simple tasks' is fundamentally the same as a limitation 'to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions[.]'") (citations omitted); *Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Bonner v. Saul*, No. 1:19-CV-1370, 2020 WL 4041052, at *15 (M.D. Pa. July 17, 2020) (finding substantial evidence supported the ALJ's RFC for, among other limitations, unskilled work involving only simple, routine tasks that are not performed at a production rate pace where the record reflected, *inter*

14

*alia*, "relatively normal mental status findings, including that Bonner exhibited coherent thought processes, a normal attitude and affect, good insight, normal thought content, intact recent and remote memory, and intact cognitive functioning").

Plaintiff, however, challenges the ALJ's RFC determination, complaining that the ALJ improperly relied on the state agency opinions when neither of those consultants had Plaintiff's "complete medical record at the time of their evaluations." *Plaintiff's Social Security Brief*, ECF No. 8, pp. 14–24 (citing, *inter alia*, *Cadillac v. Barnhart*, 84 F. App'x 163 (3d Cir. 2003); *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 210–11 (3d Cir. 2019)). Plaintiff's argument is not well taken. As an initial matter, state agency physicians are experts in Social Security disability programs. SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may rely on a state agency consultant's findings and opinions even where there is a lapse of time between the consultant's report and the ALJ's decision and where additional medical evidence is later submitted. *Chandler*, 667 F.3d at 361 (("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required.") (emphasis in original) (citations omitted); *Wilson v. Astrue*, 331 F. App'x 917, 919 (3d Cir. 2009) ("Generally, an ALJ is required to consider the reports of State agency medical consultants; however, there is no requirement that an ALJ must always receive an updated report from the State medical experts whenever new medical evidence is available.").

Moreover, Plaintiff's reliance on *Cadillac* and *Nazario* are unavailing. In *Cadillac*, the United States Court of Appeals for the Third Circuit found that the ALJ had erred in rejecting the

opinion of a physician who had access to a claimant's complete medical record (including, *inter alia*, a CT scan of the claimant's back taken during a subsequent hospitalization) but instead giving controlling weight to the opinions of the reviewing state agency physicians who did not have the benefit of the entire record, including the CT scan. *Cadillac*, 84 F. App'x at 168–69. Conversely, in the present case, there is no competing medical opinion that the ALJ improperly rejected. Plaintiff also relies on *Nazario* for the proposition that "'[t]he reports of non-examining physicians are generally given less weight than those of examining and treating physicians.'" *Plaintiff's Social Security Brief*, ECF No. 8, p. 15 (quoting *Nazario*, 794 F. App'x at 210–11). However, Plaintiff does not explain how this proposition applies where no competing opinion— treating or otherwise—exists in the record. *See id*. In any event, for claims filed after March 27, 2017,[5] the Commissioner's regulations eliminated the hierarchy of medical source opinions that previously gave preference to treating sources. *Compare* 20 C.F.R. § 416.927 *with* 20 C.F.R. § 416.920c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources").[6]

Plaintiff goes on to insist that mental health records from Rutgers University dated after the state agency review are significant because these records "document[] Plaintiff's various symptoms, including auditory hallucinations, racing thoughts, ruminating thoughts, irritability,

---

[5] As previously noted, Plaintiff's application was filed on November 24, 2020.

[6] While the Commissioner considers the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, 20 C.F.R. § 416.920c(c), the applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 416.920c(a).

poor concentration, depression, anxiety, and limited insight." *Plaintiff's Social Security Brief*, ECF No. 8, p. 16 (citing R. 709; 713; 715; 717; 719-720; 723; 729; 732; 735; 737; 739; 741; 751-752; 769; 809). Plaintiff's argument is not well taken. As set forth above, the state agency reviewing consultants considered medical evidence that included, *inter alia*, Plaintiff's reports of visual, tactile, and auditory hallucinations; paranoia; and anxiety. R. 58–60, 69, 72. Notably, Plaintiff fails to explain how the evidence referred to by him should result in new or different RFC limitations or an award of benefits. *See generally Plaintiff's Social Security Brief*, ECF No. 8, pp. 16–17; *see also Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than thrown down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments."). Plaintiff's failure in this regard is particularly telling where the ALJ noted that Plaintiff reported in March 2022 that his symptoms had improved. R. 19.

In continuing to challenge the RFC determination, Plaintiff complains that the ALJ engaged in cherry picking, arguing that, although the ALJ made "quick reference to only two treatment notes from Rutgers University dated January 18, 2022, and March 15, 2022", she did "not even reference . . . that he experiences auditory hallucinations." *Plaintiff's Social Security Brief*, ECF No. 8, pp. 17–18 (citing, *inter alia*, R. 19). Plaintiff is mistaken. As detailed above, the ALJ expressly noted that the record dated March 15, 2022, reflected that Plaintiff was

"hearing voices" but that this symptom—as well as other symptoms—had improved. R. 19. To the extent that Plaintiff intends to rely on the other symptoms referred to by him, this Court has already explained why such evidence does not amount to reversible error. At bottom, Plaintiff has not shown that the ALJ engaged in prohibited cherry picking.

Plaintiff goes on to complain that "the ALJ was not equipped, as a layperson, to interpret Plaintiff's records and assess limitations without the help of a trained medical professional's Assessment"; that the ALJ improperly interpreted "raw medical data"; and that the absence of an examining medical opinion regarding Plaintiff's functional limitations requires remand. *Plaintiff's Social Security Brief*, ECF No. 8, pp. 18–24. These complaints are not persuasive. The ALJ did not rely on simply her own "lay opinion," nor did she otherwise improperly interpret "raw medical data": As Plaintiff acknowledges, the ALJ relied on the findings of the state agency reviewing consultants when crafting the RFC determination. R. 19. Moreover, as this Court has already explained, it is the ALJ—not a medical or psychological expert—who is charged with making the ultimate disability and RFC determinations. *Chandler*, 667 F.3d at 361. Accordingly, "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003) ("Primarily, the ALJ is responsible for making a residual functional capacity determination based on the medical evidence, and he is not required to seek a separate expert medical opinion."). Notably, "the ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." *Chandler*, 667 F.3d at 362.

In his final challenge, Plaintiff contends that the ALJ failed to consider Plaintiff's non-severe physical impairments of lumbago and obesity "at subsequent steps of the sequential

evaluation[,]" including when crafting the RFC determination. *Plaintiff's Social Security Brief*, ECF No. 8, pp. 24–28. Plaintiff's arguments are not well taken. After finding that Plaintiff's medically determinable impairments of lumbago and obesity were non-severe, the ALJ expressly considered at step three of the sequential evaluation, *inter alia*, Listing 1.15, which addresses disorders of the skeletal spine; Listing 1.16, which addresses lumbar spinal stenosis; and obesity. R. 14–15. Although the ALJ did not specifically refer to lumbago and obesity by name, the ALJ considered at step four, *inter alia*, Plaintiff's allegations of back pain, his alleged difficulty in walking and sitting, and his BMI of 39.7, but the ALJ also considered the other findings that fell within normal limits, including normal respiratory effort without rales, rhonchi, or wheezes; and Plaintiff's normal gait, posture, and motor behavior during his consultative examination on March 1, 2021. R. 17–18. After considering this evidence, and indeed all the record evidence, the ALJ reasonably concluded that Plaintiff was capable of performing a full range of work at all exertional levels. R. 16–20. Notably, "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"); *Putman v. Colvin*, No. 3:15-CV-412, 2016 WL 1301048, at *7–8 (M.D. Pa. Apr. 4, 2016) (affirming denial of benefits where the claimant "has failed to point to any evidence that the diagnoses identified above [non-severe physical impairments of hypertension, diabetes mellitus, obesity, degenerative disc disease of the cervical spine, and carpal tunnel syndrome] actually resulted in any limitation or restriction related to any functional capacity"). Plaintiff cites to no medical evidence documenting how his

19

lumbago and obesity impair his functioning or result in greater or different restrictions than those found by the ALJ and which would lead to a different outcome. *See Plaintiff's Social Security Brief*, ECF No. 8, pp. 24–28; *see also Grella v. Colvin*, No. 3:12-cv-2115, 2014 WL 4437640, at *18 (M.D. Pa. Sept. 9, 2014) ("[T]he ALJ cannot accommodate limitations which do not exist, or which cannot be found in the medical record."). Plaintiff's argument, therefore, boils down to nothing more than a disagreement with the ALJ's decision, which the Court has already explained is supported by substantial evidence. *See Perkins v. Barnhart*, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."); *Markoch v. Comm'r of Soc. Sec.*, No. 1:20-CV-00417, 2020 WL 7586953, at *4-5 (D.N.J. Dec. 22, 2020) ("With regard to their impact on the RFC determination even when those impairments are considered not severe, Plaintiff does not articulate what additional restrictions should have been implemented. It is Plaintiff's burden to establish the severity of her impairments, and Plaintiff's challenge to the ALJ's consideration of her non-severe impairments amounts to mere disagreement with his analysis rather than showing any substantive error."). Accordingly, based on this record, the ALJ's failure to expressly mention lumbago and obesity at step four is, at most, harmless error and does not require remand. *See Shinseki*, 556 U.S. at 409−10; *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case").

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does her consideration of the opinions of the state agency reviewing consultants.

**VI.    CONCLUSION**

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date: June 10, 2025          *s/Norah McCann King*
                                  NORAH McCANN KING
                           UNITED STATES MAGISTRATE JUDGE